USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/28/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
 :
UNITED STATES OF AMERICA, :
 :
         -against- :      25-CR-46 (VEC)
 :
BARNEY HENRY, :      OPINION AND ORDER
 :
         Defendant. :
 :
------------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      On March 19, 2024, a shooting occurred in the Bronx, New York. Compl., Dkt. 1, ¶ 3. Video surveillance footage captured a male wearing a black coat with bright orange lining (the "Shooter") conferring with another individual ("CC-1") on the corner of Southern Boulevard and Jennings Street. *Id.* ¶¶ 3.a–3.c. The Shooter then approached the building adjacent to the surveillance cameras (the "Building"), pulled a firearm from his right coat pocket, and fired multiple times at a male wearing a black coat with fur lining who had just exited the Building (the "Victim"). *Id.* ¶¶ 3.d–3.f. A surveillance camera captured footage of the Shooter's face during the incident. *Id.* ¶ 3.f. A still photograph taken from the video is grainy, and the Shooter's face is partially obscured by his hood. *Id.*

      A police officer familiar with Defendant Barney Henry ("Officer-1") reviewed the still photograph of the Shooter taken from the surveillance video and identified the shooter as Mr. Henry. Historical Cellphone Location Information Warrant, Dkt. 37-1 ("HCLI Warrant"), at 14–15 ¶ 10.[1] Citing that identification, as well as several other facts, the Government sought a

---

[1]     Pagination of the warrants refers to the ECF page numbers.

warrant to obtain historical cell-site location information ("CSLI") for Mr. Henry's cellphone for the period of March 19, 2024, through November 21, 2024. *Id.* at 1 ¶ 3, 6–17 ¶¶ 6–19. On November 22, 2024, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, signed the HCLI Warrant. *Id.* at 18, 21. Following Mr. Henry's federal arrest in connection with this matter, on January 10, 2025,[2] upon application by the Government, the Honorable Barbara C. Moses, United States Magistrate Judge for the Southern District of New York, signed a search warrant for the cellphone seized from Mr. Henry at the time of his federal arrest. Warrant for Search of iPhone Seized Attendant to Arrest, Dkt. 37-2 ("Arrest Phone Warrant"), at 1.

On January 3, 2025, a Complaint was filed charging Mr. Henry with one count of possession of ammunition following a felony conviction in violation of 18 U.S.C. § 922(g)(1) (the "Offense"), *see* Compl.; an Indictment charging the same followed on February 6, 2025, *see* Indictment, Dkt. 15. On May 9, 2025, Mr. Henry moved to suppress the evidence obtained from the HCLI Warrant and the Arrest Phone Warrant (collectively, the "Warrants"). *See* Def. Mem., Dkt. 37. For the following reasons, Mr. Henry's motion to suppress is DENIED.

## BACKGROUND[3]

At approximately 5:24 P.M. on March 19, 2024, a surveillance camera near the Building captured the Shooter pacing at the northwest corner of Jennings Street and Southern Boulevard. Compl. ¶ 3.a. CC-1 approached a group of men just outside the Building, a short distance from

---

[2] Mr. Henry had previously been arrested on April 9, 2024, by the New York City Police Department ("NYPD") and charged with attempted murder. HCLI Warrant at 15 ¶ 11.

[3] The Court considered the parties' submissions, which consisted of the parties' briefs, the Warrants, and the underlying applications for the Warrants. Neither the Government nor Mr. Henry requested a hearing in connection with his motion. *See* Gov't Mem., Dkt. 39, at 15 n.5.

the pacing Shooter, conversed for a short while, then walked towards the Shooter. *Id.* ¶¶ 3.b–3.c. The pair appeared to converse immediately before the Shooter approached the Building. *Id.* ¶¶ 3.c–3.d. The Victim exited the Building and walked past the Shooter. *Id.* ¶¶ 3.e–3.f. The Shooter removed a firearm from his right coat pocket and fired at the Victim multiple times. *Id.* ¶ 3.f. The Shooter fled on foot. *Id.* ¶ 3.g. At approximately 5:30 P.M., multiple individuals called 911 stating that between four and six shots had been fired and describing the Shooter as a Black male wearing a black coat with orange lining. HCLI Warrant at 13 ¶ 9.a.

After police responded to the incident, at approximately 10:41 P.M. that evening, a still photograph of the Shooter's face taken from the surveillance footage was circulated among law enforcement officers. *Id.* at 14 ¶ 10.a. Officer-1 identified the Shooter has Mr. Henry. *Id.* Officer-1 had seen Mr. Henry at the corner where the shooting took place approximately once every one to two months for about five years. *Id.* at 14 ¶ 10.b. He first interacted with Mr. Henry in approximately 2020 or 2021. *Id.* at 14 ¶ 10.c. In about 2022, Officer-1 arrested Mr. Henry in connection with a domestic violence incident after recognizing Mr. Henry on the street based on a wanted flyer. *Id.* at 14 ¶ 10.d. Officer-1 interacted with Mr. Henry at least six or seven times in 2024, and each time Mr. Henry was at the same street corner near the Building. *Id.* at 15 ¶ 10.e. On April 9, 2024, Mr. Henry was arrested in connection with the shooting and charged with attempted murder in the second degree. *Id.* at 15 ¶ 11.

On November 21, 2024, the Government applied for the HCLI Warrant and sought historical CSLI and toll records for Mr. Henry's cellphone. *Id.* at 1–3. The Government submitted an affidavit from NYPD Detective Massiel Pages in support of its application. *See id.* at 4–18. In support of the application, Detective Pages: (1) provided the above-detailed description of the shooting along with still images from the surveillance cameras, *id.* at 7–13 ¶¶

3

8.a–8.g; (2) provided the above-detailed history of Officer-1's interactions with Mr. Henry and identification of him as the Shooter, *id.* at 14–15 ¶¶ 10.a–10.f; (3) relayed that she had compared the still image and Mr. Henry's arrest photo from April 9, 2024, and believed them to be pictures of the same person, *id.* at 15 ¶ 12; and (4) asserted that law enforcement records show that Mr. Henry had previously been convicted of attempted robbery in the second degree, *id.* at 15 ¶¶ 13–14. Detective Pages also averred that there was probable cause to believe Mr. Henry had used the cellphone in connection with the shooting because, based on Detective Pages's training and experience: (1) individuals who commit shootings often carry their cellphones to prepare for the shooting, including to coordinate with co-conspirators; (2) the surveillance footage captured Mr. Henry possibly coordinating with CC-1 to ascertain the Victim's location in order to commit the shooting; and (3) Mr. Henry's cellphone received a call immediately after the shooting and made or received approximately eight calls in the few minutes after the shooting. *Id.* at 16–17 ¶¶ 15–19.

On January 8, 2025, Mr. Henry was arrested by federal agents. *See* Minute Entry, Dkt. 4; Arrest Phone Warrant at 11 ¶ 13. Law enforcement officers seized his cellphone, and the Government applied for a warrant to search the device. *See* Arrest Phone Warrant. This was a different cellphone than the cellphone seized when Mr. Henry was arrested by NYPD on April 9, 2024. *Id.* at 11–12 ¶ 15. Detective Pages submitted an affidavit to establish probable cause to support issuance of a warrant to search Mr. Henry's cellphone. The affidavit asserted the same facts that supported a finding of probable cause in the application for the HCLI Warrant, in addition to the following: (1) information obtained from the HCLI Warrant that showed Mr. Henry's cellphone pinged a cell site one block east of the shooting site immediately prior to the shooting and at least six times within ten minutes following the shooting, *id.* at 10 ¶ 10.d–10.e;

(2) Mr. Henry completed 110 phone calls and 74 text messages the day of the shooting, *id.* at 10 ¶ 11.b; (3) another individual ("CC-2") fled alongside the Shooter after the latter fired at the Victim, waited for the Shooter to complete a different shooting, and again fled by his side, *id.* at 8–9 ¶¶ 9.a–9.c, 11 ¶ 14; and (4) Mr. Henry could have transferred the data from the cellphone seized when he was arrested by NYPD to the device seized on January 8, 2025, or used the latter device to communicate about the shooting or store records pertaining to the possession of the firearm or ammunition, *id.* at 11–13 ¶¶ 15, 17–18.

Mr. Henry moved to suppress all evidence obtained from the Warrants. The Government opposed the motion. Gov't Mem., Dkt. 39.

## DISCUSSION

### I.    Legal Standard for the Motion to Suppress

"The Fourth Amendment to the Constitution provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting U.S. CONST. amend. IV).

The Supreme Court has established that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI"; accordingly, the Fourth Amendment requires the Government to obtain a warrant supported by probable cause before collecting CSLI. *Carpenter v. United States*, 585 U.S. 296, 309–10 (2018). "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause to issue a search warrant requires a two-part showing: (1) "that a crime was committed;" and (2) "probable cause to believe that evidence of such crime

is located" in the place or device to be searched. *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983); *see also United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (the information provided must establish "a sufficient nexus between the criminal activities alleged and" the place to be searched).

Probable cause exists if the information in the supporting affidavit supplies "a fair probability that contraband or evidence of a crime will be found in a particular place" or in the particular records to be searched. *Canfield*, 212 F.3d at 718 (quoting *Gates*, 462 U.S. at 238). A magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (citation omitted). A reviewing court gives "substantial deference to the finding of an issuing judicial officer that probable cause exists," addressing only whether there was "a substantial basis" for the magistrate judge's determination. *Id.* (citation omitted). Even so, a warrant is invalid where the magistrate judge improperly analyzes the totality of the circumstances supporting the probable-cause determination. *See id.*; *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Thus, the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." (quoting *Gates*, 462 U.S. at 238)).

## II.     Defendant's Motion to Suppress Evidence Obtained Through the Warrants is Denied

Mr. Henry argues that each Warrant affidavit failed to establish probable cause that Mr. Henry committed the Offense or that the search of Mr. Henry's cellphone, as well as the requested CLSI, would yield evidence of the Offense. *See* Def. Mem. at 9–17. The Government

disputes Mr. Henry's characterization of the information contained in the affidavits and maintains that there was probable cause to issue the Warrants. *See* Gov't Mem. at 5–12. The Government also argues that the Warrants were executed in good faith, *id.* at 12–14, which Mr. Henry disputes, Def. Reply Mem., Dkt. 43, at 3–5.

The Court concludes that probable cause existed to issue the Warrants. Even if the totality of the circumstances did not support probable cause, because the Warrants were executed in good faith, suppression would be inappropriate.

### A. The HCLI Warrant Application Established Probable Cause that Mr. Henry Committed the Offense

Mr. Henry argues that the sole basis for the Magistrate Judge to determine that there was probable cause to believe that Mr. Henry was the Shooter was Detective Pages's comparison of his arrest photo with the still image of the Shooter taken from the surveillance footage. Def. Mem. at 2, 9–10. That comparison was far from the sole basis for the probable cause determination. The affidavit in support of the warrant also relied on the identification of the shooter made by Officer-1. Officer-1 is familiar with Mr. Henry, having seen and interacted with him on many occasions over many years. HCLI Warrant at 14–15 ¶¶ 10.a–10.f. Mr. Henry, however, dismisses the identification made by Officer-1 as equivocal and lacking any supporting evidence. Def. Mem. at 11.

It is well settled that "[t]he observations of fellow officers are a reliable basis upon which to determine probable cause." *Velardi v. Walsh*, 40 F.3d 569, 574 (2d Cir. 1994). In a somewhat similar context, a defendant challenging the veracity of a supporting affidavit for an arrest warrant argued that a statement of an unnamed officer — who identified the defendant based on surveillance footage — that he had "numerous prior interactions" with the defendant was false.

*United States v. Powell*, 634 F. Supp. 3d 48, 52 (E.D.N.Y. 2022). The court held that, although the affidavit was "aggressively worded," there was no misstatement, as the officer's subsequent testimony "established that he had more than sufficient exposure to [the defendant] to know what he looked like when the affidavit was drafted." *Id.* at 52–53. Detective Pages relied both on her own comparison of Mr. Henry's arrest photo with the image of the Shooter taken from the surveillance footage as well as the identification made by Officer-1 to establish probable cause. HCLI Warrant at 14–15 ¶¶ 10.a–10.f, 12. Her reliance on Officer-1's observations, rooted in the officer's frequent interactions with and exposure to Mr. Henry, including on the corner where the shooting took place, was sufficient to establish probable cause to believe Mr. Henry was the shooter. *See Velardi*, 40 F.3d at 574.

The premise of Mr. Henry's argument is that an identification from a photograph by a person who was not an eyewitness requires some additional supporting evidence to establish probable cause. The Court sees no support in precedent or logic for that position. In *United States v. Hayes*, on which Mr. Henry relies, the Second Circuit noted that a "photographic comparison" by law enforcements agents "may be sufficient evidence to establish guilt beyond a reasonable doubt . . . and thus a fortiori may constitute probable cause for an arrest." 553 F.2d 824, 826 (2d Cir. 1977) (citation omitted). That the Government in *Hayes* put forward additional evidence beyond that comparison does not mean that additional evidence is required. *Id.* Here, Officer-1's identification of Mr. Henry as the Shooter is sufficient evidence to establish probable cause that he committed the Offense.[4] Magistrate Judge Aaron therefore had

---

[4] Nothing in the affidavit for the HCLI Warrant implies that Officer-1's identification of Mr. Henry was tentative or uncertain. *See Williams v. City of New York*, No. 10-CV-2676 JG LB, 2012 WL 511533, at *4 (E.D.N.Y. Feb. 15, 2012).

a "substantial basis" to find probable cause to believe Mr. Henry was the Shooter. *Raymonda*, 780 F.3d at 113 (citation omitted).

### B. The HCLI Warrant Application Established a Sufficient Nexus Between the Information Sought and the Offense

Whether the HCLI Warrant application established probable cause to believe that the CSLI and toll records for Mr. Henry's cellphone would yield evidence of the Offense presents a closer question. Even so, the Court cannot conclude that Magistrate Judge Aaron lacked a "substantial basis" for the determination that probable cause existed. *Id.*

The Second Circuit has directed lower courts to exercise "some caution in assessing probable cause" for warrants authorizing the collection of CSLI and similar data, as "modern cell phone usage is so ubiquitous that this type of location information can reveal not only nearly the whole of an individual's movements but also, in the process, much about his personal and professional life." *United States v. Lauria*, 70 F.4th 106, 128–29 (2d Cir. 2023) (citing *Carpenter*, 585 U.S. at 311). This is so because "individuals have a reasonable expectation of privacy in the whole of their physical movements." *Carpenter*, 585 U.S. at 310 (citations omitted). The Government's collection of "time-stamped data" implicates serious privacy concerns, as such data can reveal not only the individual's "particular movements" but also "familial, political, professional, religious, and sexual associations." *Id.* at 311 (citation omitted).

The Court agrees with Mr. Henry that the mere assertion that individuals who commit shootings often carry their cellphones cannot, standing alone, support a finding of probable cause sufficient to obtain CSLI. Such a justification amounts to little more than a "hunch," which would be insufficient to support such an intrusion into an individual's privacy and effectively

9

rubberstamp the issuance of warrants for CSLI due to the ubiquity of cellphone use. *Lauria*, 70 F.4th at 128 (quoting *Terry v. Ohio*, 392 U.S. 1, 22, 27 (1968)); *see also United States v. Bertini*, No. 23 CR 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) ("At bottom, Agent Harper's assertion that there is probable cause to believe that Bertini was carrying his cell phone when he burglarized the banks rests on nothing more than the impermissible 'hunch' referenced in *Lauria*, 70 F.4th at 128[,] . . . premised on the agent's belief that most people carry their cell phones most of the time, including when they commit crimes.").

Detective Pages did not only aver, however, that individuals frequently carry their cellphones during the commission of shootings but also stated that they use cellphones to coordinate with co-conspirators about the locations of the intended victims. HCLI Warrant at 16 ¶ 16. The HCLI Warrant application claimed that a surveillance camera captured the Shooter appearing to coordinate with CC-1 prior to the shooting. *Id.* at 16–17 ¶ 17. According to records obtained from Mr. Henry's cellphone service provider, within one minute of the shooting, Mr. Henry received a call, then made or received eight more calls within the next ten minutes, strongly supporting the inference that he possessed the cellphone at the time of the shooting and generating location data that would be highly relevant. *Id.* at 17 ¶ 18. Because the Government put forward evidence of a conspiracy and connected that conspiracy to Mr. Henry's contemporaneous use of his cellphone, the totality of the circumstances supports Magistrate Judge Aaron's determination that there was probable cause to believe that Mr. Henry's cellphone was possessed during and used in connection with the shooting. *Cf. Bertini*, 2023 WL 8258334, at *8 ("If Bertini had a co-conspirator and used his cell phone to communicate with his co-

conspirator, it might be reasonable to expect that he would carry his cell phone while committing the offenses.").[5]

### C. Probable Cause Existed to Issue a Search Warrant For the Arrest Phone

Having determined that there was probable cause to issue the HCLI Warrant, the Court concludes that there was also probable cause to issue the Arrest Phone Warrant. Because the Arrest Phone Warrant asserted the same grounds for probable cause as the HCLI Warrant, the issuance of the Arrest Phone Warrant was proper for the same reasons it was proper to sign the HCLI Warrant. The supporting evidence in the Arrest Phone Warrant affidavit was even stronger, as it included information gleaned from the HCLI Warrant that tended to show that Mr. Henry possessed a cellphone at the time of the shooting and showed that Mr. Henry participated in an unusually high volume of phone calls and text messages that day. Arrest Warrant at 10 ¶¶ 10.d–11.b. The Arrest Phone Warrant application also identified another co-conspirator, CC-2, who fled alongside the Shooter after the second shooting that day, *id.* at 8–9 ¶¶ 9.b.–9.c, 11 ¶ 14,

---

[5] Mr. Henry does not argue that the scope of the HCLI Warrant was overbroad. Had he moved to suppress on that issue it would have presented a very close question. A warrant is defective for overbreadth "if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (citation omitted). The Government established probable cause to believe that evidence of Mr. Henry's location "prior to and in the immediate aftermath of the [s]hooting" would be obtained through collection of CSLI. HCLI Warrant at 17 ¶ 19. Allowing the Government to collect CSLI for Mr. Henry's cellphone for the eight-month period from March 19, 2024, through November 21, 2024, appears to be excessive, as the relevance of his whereabouts months after the shooting is not obvious. *Id.* at 1, 6–17 ¶¶ 6–19. Detective Pages claimed that the CSLI data would also provide evidence of places that Mr. Henry "frequents" where he could conceivably "store firearms and/or ammunition." *Id.* at 17 ¶ 19. That is a very thin reed on which to rest probable cause. The Court cannot conclude, however, that Magistrate Judge Aaron lacked a "substantial basis" to find probable cause to believe that that requested CSLI would reveal evidence of the Offense in light of the Court's above-discussed analysis of probable cause and the Government's stated need to collect information data on places that Mr. Henry may have used to store firearms or ammunition. *Raymonda*, 780 F.3d at 113 (citation omitted); see also *United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010) ("The determination of whether there was probable cause sufficient to support the breadth of the warrants is based on a totality-of-the-circumstances analysis.").

further buttressing the conclusion that there was probable cause to believe that Mr. Henry possessed and used his cellphone in connection with the Offense.

Mr. Henry points out that the cellphone targeted by the Arrest Phone Warrant is different from the cellphone seized during the April 9, 2024 arrest for which the Government obtained CSLI. Def. Mem. at 16. In light of the strength of the probable cause determination that Mr. Henry is the Shooter and used a cellphone in connection with the Offense, based on Detective Pages's experience, *see* Arrest Warrant at 11–13 ¶¶ 15–18, there is at least some "probability" that the cellphone targeted by the Arrest Phone Warrant contained data transferred from the cellphone that he possessed at the time of the shooting. *District of Columbia v. Wesby*, 583 U.S. 48, 57–58 (2018) (permitting officers to make "common-sense conclusions about human behavior" (quoting *Gates*, 462 U.S. at 231, 243 n.13)).

In short, there was probable cause to issue the Arrest Phone Warrant.

### D. Even if the Warrant Applications Were Defective, the Good Faith Exception Would Apply

Even if there were not probable cause to support the issuance of the Warrants, the good faith exception to the exclusionary rule would apply. Suppression of evidence requires conduct "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). Under the good faith exception, "evidence seized pursuant to a defective warrant will not be suppressed if it was 'obtained in objectively reasonable reliance' on the invalid warrant." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

The good faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Id.* at 179–80 (citation omitted). Mr. Henry asserts that the latter two grounds render the good faith exception inapplicable. Def. Reply Mem. at 3–5.

Mr. Henry argues that there was an insufficient nexus between the alleged Offense and the CSLI. Beyond Detective Pages's assertion that individuals carry cellphones during shootings, as discussed above at length, the Warrant affidavits also articulated several other facts from which a judicial officer could infer a "fair probability that contraband or evidence of" the Offense could be found through the location data and through a search of the Arrest Phone. *Canfield*, 212 F.3d at 718 (quoting *Gates*, 462 U.S. at 238).

Even if those fact were not adequate to warrant a probable cause determination, rendering the Warrants defective, the existence of that evidence in the applications for the Warrants provides some "indicia of probable cause." *Purcell*, 967 F.3d at 180 (citation omitted). Even accepting Defendant's argument, the Warrants were not "so facially deficient that reliance upon [them would be] unreasonable." *Id.* (citation omitted). Accordingly, the good faith exception to the exclusionary rule would apply.

## CONCLUSION

For the foregoing reasons, Mr. Henry's motion to suppress is DENIED. The Clerk of Court is respectfully directed to close the open motion at Docket Entry 37.

**SO ORDERED.**

Date:  July 28, 2025
New York, NY

   **VALERIE CAPRONI**
   **United States District Judge**